UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

AMERICAN CIVIL LIBERTIES UNION                CIVIL ACTION
FOUNDATION OF LOUISIANA

VERSUS                                        NO: 07-04090

KATHLEEN BABINEAUX BLANCO, ET AL.             SECTION: "R"(5)

### ORDER AND REASONS

Before the Court is the motion to dismiss of defendants Governor Blanco and Treasurer Kennedy.  For the following reasons, the Court DENIES defendants' motion to dismiss.


**I.    BACKGROUND**

On August 13, 2007, the ACLU filed a complaint pursuant to 28 U.S.C. § 1983 against Kathleen B. Blanco, Governor, State of Louisiana, in her official capacity, and John Neely Kennedy, Treasurer, State of Louisiana, in his official capacity. Plaintiff alleges that the Louisiana legislature's appropriations of unrestricted, unmonitored, non-neutral grants of state

taxpayer money to the Stonewall Baptist Church of Bossier City, Louisiana, and the Shreveport Christian Church violate the Establishment Clause of the United States Constitution, as applied to the states by the Fourteenth Amendment. (Pl.'s Compl. ¶ 17).  Plaintiff also filed a motion for temporary restraining order/preliminary injunction to prevent the treasurer from disbursing the appropriated funds to the churches pursuant to the 2007 general appropriations bill, 2007 La. Acts 18 ("Act 18").

Act 18 was passed by the Louisiana State Legislature and signed by Governor Kathleen Blanco on July 12, 2007.  It allocates funds from various state sources for purposes including state government administration, public education, local government services, and health and human services.  The final schedule of the Act, Schedule 20 (titled "Other Requirements"), includes section 20-945, "State Aid to Local Government Entities," which "provides special state direct aid to specific local entities for various endeavors." *See* 2007 La. Acts 18 at § 20-945.  As a result of recent reforms by Governor Blanco, Act 18 is the first general appropriations bill to publicly list the recipients of earmarked funds.  In Act 18, the legislature appropriated $100,000 to the Stonewall Baptist Church from the State General Fund and $20,000 to the Shreveport Christian Church, also payable out of the State General Fund. *See* 2007 La.

2

Acts 18 at § 20-945, p. 277:35-37; 278:39-40.  The legislation does not state or restrict the purpose for which the funds may be used although it requires the recipients of earmarked funds to submit a budget showing what they propose to use the money for and to provide periodic reports concerning their use of the funds. *See* 2007 La. Acts 18 at § 18(B)(1)(requiring recipient to submit a "comprehensive budget" showing "anticipated uses of the appropriations" and periodic reports concerning the use and "goals and objectives" for the funds).  By executive order, the governor additionally requires recipients of earmarked funds to complete a cooperative endeavor agreement in which they describe the public purpose for which they will use the funds and supply a budget. *See* Exec. Order No. KBB 2006-32, "Accountability for Line Item Appropriations," July 12, 2006; Exec. Order No. KBB 2005-14, "Cooperative Endeavor Agreements," May 27, 2005.

On August 27, 2007, defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction.  Defendants argue that the Eleventh Amendment of the U.S. Constitution affords Governor Blanco and Treasurer Kennedy, in their official capacities, immunity from plaintiff's suit.  Defendants additionally assert that the suit presents no justiciable case or controversy because the ACLU lacks standing and its claim is not yet ripe for judicial review.  On September

3

14, 2007, the Court heard oral argument on the pending motions.

The Court addresses below defendants' contentions that (1) the Eleventh Amendment prevents the ACLU from suing Governor Blanco and Treasurer Kennedy in their official capacities, (2) plaintiff does not have standing, and (3) this action is not ripe for judicial review.  Finding that these threshold inquiries are resolved in plaintiff's favor, the Court addresses the merits of plaintiff's motion for a preliminary injunction in a separate order.

## II.   LEGAL STANDARD

Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (*quoting Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).  The plaintiff bears the burden of demonstrating that subject matter jurisdiction exists. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

A district court may dismiss a case for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts

4

evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986) (*citing Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). "In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute." *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Williamson*, 645 F.2d at 413). A court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not prevent the plaintiff from pursuing the claim in another forum. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).


**III. DISCUSSION**

**A.    Ex Parte Young and the Eleventh Amendment**

Defendants contend that plaintiff's claims against Governor Blanco and Treasurer Kennedy, in their official capacities, must be dismissed for lack of subject matter jurisdiction because the Eleventh Amendment grants the defendants immunity. The Supreme Court has held that a lawsuit against a state employee in his official capacity is equivalent to an action against the state itself. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). If the ACLU attempted to sue the State of Louisiana,

its suit would be barred by the Eleventh Amendment.  Plaintiff's suit against Governor Blanco and Treasurer Kennedy, in their official capacities as agents of the State, is similarly barred as far as any claims for damages are concerned. *See id*.

A state official sued in his official capacity for injunctive relief, however, is a "person" under § 1983 "because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Id*. at 71 n.10 (citing *Kentucky v. Graham*, 473 U.S. 159, 167, n.14 (1985); *Ex parte Young*, 209 U.S. 123, 159-160 (1908)).  This narrow exception to sovereign immunity permits a plaintiff to sue a state official in federal court in his official capacity for prospective injunctive relief to prevent future violations of federal law. *Edelman v. Jordon*, 415 U.S. 651, 664 (1974).  Here, plaintiff alleges that the non-neutral general appropriations to two churches violate the federal constitution, and plaintiff seeks declaratory relief and an injunction prohibiting Governor Blanco and Treasurer Kennedy from releasing the appropriated funds to the churches.  Thus, "the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *McCarthy v. Young*, 381 F.3d 407, 417 (5th Cir. 2004) (quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)).

Defendants contend that they do not fall under the *Ex parte Young* immunity exception because they have no close or special connection with Act 18 and are not charged with its enforcement. In *Ex parte Young*, the Supreme Court held that the Eleventh Amendment did not bar a suit in federal court against the Minnesota attorney general to enjoin his enforcement of an allegedly unconstitutional state statute regulating railway rates. *See id.* at 161.  The Court nevertheless recognized the danger of reading this immunity exception too broadly to permit plaintiffs to test the constitutionality of statutes against state attorneys general and governors merely because of their status as state officers. *See id.* at 157.  For this reason, the Court held that to be a proper defendant in a suit to enjoin the enforcement of an allegedly unconstitutional statute, a state official "must have *some connection* with the enforcement of the act." *Id.* (emphasis added).  The requisite connection can arise out of the statute at issue or out of the official's general duties. *See id.*

In *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001), the Fifth Circuit held that to determine whether the *Ex parte Young* exception applies, a court "should gauge (1) the ability of the official to enforce the statute at issue under his statutory or constitutional powers, and (2) the demonstrated willingness of

the official to enforce the statute." *Id.* at 417.   In *Okpalobi*, providers of abortion services sued Louisiana's governor and attorney general, challenging the constitutionality of a statute that gave women who underwent an abortion a tort remedy against the doctor who performed the abortion.   The Fifth Circuit held that the governor and attorney general had no enforcement connection with the tort statute because the statute could be invoked only by private litigants.   The court further noted that there was no act or potential act of the named state officials that the court could enjoin. *Id.* at 421-22.

The Court finds that Louisiana's governor and treasurer have the "requisite connection" to the appropriations law to overcome the barrier of Eleventh Amendment immunity. *See Okpalobi*, 244 F.3d at 411 (internal quotation marks omitted).   Governor Blanco signed the statute into law on July 12, 2007.   Before the Act became law, the governor had the opportunity and authority to "veto any line item in [the] appropriation bill,"[1] including the appropriations challenged in this case. La. Const. art. IV, § 5(G)(1). *See also* 2007 La. Acts 18 at § 9 ("In the event the governor shall veto any line-item of expenditure and such veto shall be upheld by the legislature, the commissioner of

_____

[1] Governor Blanco vetoed 10 items or provisions of the general appropriations bill at issue in this case.

8

administration shall withhold from the department's, agency's, or program's funds an amount equal to the veto.").  Now that the appropriations bill has been signed into law, the governor is responsible "for administering payments pursuant to legislative line item appropriations." *See* Exec. Order No. KBB 2006-32; KBB 2005-14.

Treasurer Kennedy also has a close connection with the enforcement of the appropriations statute.  In their motion to dismiss, defendants themselves highlight his responsibilities in administering the funds appropriated in Act 18:

> Consequently, House Bill 1 contains a provision requiring Stonewall Baptist Church and Shreveport Christian Church to present a comprehensive budget to the Legislative Auditor and the State Treasury showing all anticipated uses of their respective appropriation ... In addition, and prior to making such expenditure, the State Treasury is mandated to require both institutions to agree in writing to provide written reports to the State Treasury ... In the event the State Treasury were to determine either institution failed to use the funds ... the State Treasury would demand any unexpended funds be returned ...

(Defs.' Mot. Dismiss at 8-9).  Treasurer Kennedy is also charged with disbursement of the funds appropriated to the Stonewall Baptist Church of Bossier City and Shreveport Christian Church:

> The state treasurer is hereby authorized and directed to use any available funds on deposit in the state treasury to complete the payment of General Fund appropriations for the Fiscal Year 2006-2007, and to pay a deficit arising there from out of any revenues accruing to the credit of the state General Fund during the Fiscal Year

2007-2008, to the extent such deficits are approved by
the legislature.

2007 La. Acts 18 at § 7.  Finally, Treasurer Kennedy is responsible for reviewing the recipients' cooperative endeavor agreements.  By Executive Order, all cooperative endeavor agreements that require the expenditure of public funds must be submitted to the Office of Contractual Review, Division of Administration, for review and approval, unless the director of the Office of Contractual Review delegates her authority to review them. *See* Exec. Order No. KBB 2005-14.  The Director of the Office of Contractual Review delegated her authority to approve cooperative endeavor agreements for Schedule 20 line item appropriations to the Treasurer's office. *See* Letter from Susan Smith, Director, Office of Contractual Review, to John Kennedy, State Treasurer (July 18, 2007) (Pl.'s Appendix A).

Furthermore, the Supreme Court has heard many *Ex parte Young* cases in which the plaintiff sued a governor or a treasurer, in his or her official capacity, without the Eleventh Amendment ever being raised as an impediment. *See, e.g., Van Orden v. Perry*, 545 U.S. 677 (2005) (Texas resident brought § 1983 action against state officials, including the governor, seeking a declaration that the display of a monument inscribed with the Ten Commandments on the grounds of the Texas State

10

Capitol violated the First Amendment's Establishment Clause and seeking an injunction requiring its removal); *Locke v. Davey*, 540 U.S. 712 (2004) (college student sued governor and officials of state's higher education board in Establishment Clause challenge to statute prohibiting state aid to post-secondary students pursuing theology degrees); *Wallace v. Jaffree*, 472 U.S. 38 (1985) (parent of public school children sued various Alabama state officials, including the governor, challenging the constitutionality of an Alabama school prayer and meditation statute); *Marsh v. Chambers*, 463 U.S. 783 (1983) (state legislator sued state treasurer challenging constitutionality of Nebraska legislature's practice of opening each session with a prayer by a chaplain paid with public funds).

The Court finds that plaintiff has satisfied *Ex parte Young's* "some connection" requirement as applied by the Fifth Circuit in *Okpalobi*. As the Court has demonstrated above, both officials have statutory and/or constitutional powers to enforce these two appropriations. Further, both officials have demonstrated their willingness to enforce them. Governor Blanco promulgated her line-item vetoes and signed the appropriations bill into law. Treasurer Kennedy represented to this Court, through counsel, that if he receives a complete cooperative endeavor agreement he is statutorily required to disburse funds

to the submitting church. *See* Transcript of Status Conference at 7-8 (Aug. 16, 2007); *see also* 2007 La. Acts 18 at § 2 (providing that "[a]ll money from federal interagency, statutory dedications, or self-generated revenues shall be available for expenditure in the amounts herein appropriated").

**B.   Standing**

The ACLU Foundation of Louisiana sued Governor Blanco and Treasurer Kennedy on its own behalf and on behalf of its members who are residents of and pay state taxes in Louisiana. (Pl.'s Compl. ¶ 4).  The ACLU-LA asserts that it has organizational and taxpayer standing.  An organization has standing to sue on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). The Court finds that the ACLU-LA has sufficiently shown organizational standing.  Its members pay taxes in the state of Louisiana and would have taxpayer standing to sue in their own right, as the Court elaborates on below.  The ACLU-LA sued the governor and treasurer to halt the alleged unconstitutional disbursement of its and its members' tax dollars, which is

12

germane to the organization's primary purpose of protecting "those civil liberties embodied in the United States and Louisiana constitutions." (Pl.'s Ex. A, Decl. of Katie Schwartzmann).  Finally, neither the ACLU-LA's claim, nor the request for a preliminary injunction, requires "individualized proof" and is "thus properly resolved in a group context." *Hunt*, 432 at 344.

Plaintiff, on behalf of itself and its members, also asserts taxpayer standing.  The Supreme Court recently affirmed that when a plaintiff alleges that an "Establishment Clause violation [i]s funded by a specific congressional appropriation and ... undertaken pursuant to an express congressional mandate," for standing purposes the taxpayer-plaintiff has "established the requisite 'logical link between [their taxpayer] status and the type of legislative enactment attacked.'" *Hein v. Freedom from Religion Foundation, Inc.*, 127 S. Ct. 2553, 2565 (2007) (plurality opinion) (citing *Flast v. Cohen*, 392 U.S. 83, 90 (1968)). *See also Bowen v. Kendrick*, 487 U.S. 589, 618 (1988) (recognizing the longstanding rule that federal taxpayer standing is sufficient for Establishment Clause claims).

In the Fifth Circuit, "[i]n order to establish state or municipal taxpayer standing to challenge an Establishment Clause violation, a plaintiff must not only show that he pays taxes to

the relevant entity, he must also show that tax revenues are expended on the disputed practice." *Doe v. Duncanville Indep. Sch. Dist.*, 70 F.3d 402, 408 (5th Cir. 1995) (plaintiff lacked taxpayer standing to challenge distribution of Gideons' Bible in his school district because district did not expend funds or resources on the distribution); *see also Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 606 (5th Cir. 2004) (citing *Duncanville*). The ACLU has submitted evidence, uncontested by defendants, establishing that members of the ACLU-LA reside and are employed in the State of Louisiana and that "[s]uch members receive income from their employment within the State of Louisiana and pay taxes on that income to the State of Louisiana." (Pl.'s Ex. A, Decl. of Katie Schwartzmann). Plaintiff has thus satisfied the first element of taxpayer standing.

It is also clear that state tax revenues are to be expended on the challenged practice, satisfying the second element of taxpayer standing. Act 18 authorizes the following "special state direct aid to specific local entities for various endeavors":

> Payable out of the State General
> Fund (Direct) to the Stonewall
> Baptist Church of Bossier City,
> Louisiana                                    $100,000

14

> Payable out of the State General
> Fund (Direct) to the Shreveport
> Christian Church                                    $20,000

2007 La. Acts 18 at § 20-945.  The Court finds that the ACLU has
properly alleged taxpayer standing. *Cf. Doremus v. Board of
Educ.*, 342 U.S. 429, 434 (1952) (a court may find a justiciable
controversy when a state taxpayer action to restrain
unconstitutional acts shows "a measurable appropriation or
disbursement of ... funds occasioned solely by the activities
complained of").

Contrary to defendants' assertion, plaintiff's alleged
injury is concrete and particularized, and actual or imminent.
*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  The
ACLU alleges that the legislature has appropriated taxpayer funds
to favored religious entities for no stated purpose.  That the
two churches have yet to submit necessary documentation to obtain
the funds does not vitiate standing.  The ACLU has alleged a
concrete and imminent threat of disbursement of
unconstitutionally appropriated funds.

The ACLU challenges Act 18 on its face.  The Supreme Court
has permitted taxpayers to challenge statutes on their face when
their injury is threatened.  For example, in *Committee For Public
Education and Religious Liberty v. Nyquist*, 413 U.S. 756 (1973),
the Court permitted New York residents and taxpayers to challenge

15

legislation establishing financial aid programs for nonpublic
elementary and secondary schools immediately after the
legislation was signed and before the schools submitted
applications for the challenged grants and before the tuition
grants and tax benefit programs were implemented.  The Act
provided partial tuition reimbursements to parents of children
attending the nonpublic elementary and secondary schools who
submitted to the Commissioner of Education a receipted tuition
bill. *Id*. at 764.  The Court did not wait to see if parents would
take advantage of the reimbursement or tax benefit program before
finding it facially unconstitutional. *See also Bowen*, 487 U.S. at
618 (1988) (court finding "no dispute that appellees," federal
taxpayers, had "standing to ... challenge the AFLA on its face").

    Although defendants argue that plaintiff's injury is
speculative because the churches have yet to submit their
cooperative endeavor agreements, the Court finds there is an
imminent threat that the funds will be disbursed.  In *Nyquist*,
plaintiffs had standing even though they challenged authorized
expenditures that had not yet been disbursed, and the applicants
still had to take steps to obtain the authorized funds.  Here,
there is no indication that either the governor or treasurer
intends to withhold these funds on Establishment Clause grounds,
or that they are even authorized to do so.  The governor already

16

refused to veto the appropriations, and Treasurer Kennedy does not even argue that he will or must review the cooperative endeavor agreements for sufficiency under the Establishment Clause.  Plaintiffs do not have to go the extra step of proving that the named beneficiaries of appropriated funds have actually obtained the money to establish standing.

To the extent defendants are arguing that plaintiff's injury is speculative because the churches must specify a public purpose in their cooperative endeavor agreements, this argument falls flat.  The legislature did not specify any secular purpose when it appropriated these funds, and it made the grants on the basis of the religious identity of the recipients.  Under the Executive Order requiring cooperative endeavor agreements, the favored religious institutions have the discretion to decide what to use the public money to accomplish, as long as the purpose can be labeled "public."  The cooperative endeavor agreements cannot obviate the constitutional injury from the alleged lack of neutrality in the appropriations process, or eliminate the injury arising from the state's enactment of a law favoring some religious denominations over others. *See Nyquist*, 413 U.S. at 780 (requiring that public funds be used for a neutral purpose); *Larson v. Valente*, 456 U.S. 228, 244 (1982) ("The clearest command of the Establishment Clause is that one religious

17

denomination cannot be officially preferred over another."); *Board of Educ. of Kiryas Joel Village Sch. Dist. v. Grumet*, 512 U.S. 687 (1994).

The Court finds that plaintiff has carried its burden of showing that it has organizational and taxpayer standing, and that there is a threatened and imminent injury that taxpayer funds that have already been appropriated will be disbursed in violation of the Establishment Clause.

**C.  Ripeness**

Defendants also argue that this action is not yet ripe for judicial review because cooperative endeavor agreements have not been submitted.  The ripeness doctrine's "basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580 (1985) (quoting *Abbot Laboratories v. Gardner*, 387 U.S. 136, 148, *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99 (1977)).  The Court's analysis of ripeness is informed by "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Abbot Laboratories*, 387 U.S. at 149.  "The fitness and hardship prongs must be balanced, and '[a] case is generally ripe if any remaining questions are purely legal ones.'" *Texas v. U.S.*, – F.3d –, 2007 WL 2340781 at *6 (5th

18

Cir. 2007) (quoting *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987)).

The Court finds that the motions before it are ripe for adjudication.  First, all of the legal issues are before the Court. *See Thomas,* 473 U.S. at 581 ("The issue presented in this case is purely legal, and will not be clarified by further factual development.").  In *Flast*, the Supreme Court implicitly addressed many of the reasons why a case based on taxpayer standing is fit for judicial decision, holding:

> [A] taxpayer will have standing ... when he alleges that ... his tax money is being extracted and spent in violation of specific constitutional protections ... Under such circumstances, we feel confident that the questions will be framed with the necessary specificity, that the issues will be contested with the necessary adverseness and that the litigation will be pursued with the necessary vigor to assure that the constitutional challenge will be made in a form traditionally thought to be capable of judicial resolution.

*Id*. at 106.  The ACLU challenges these appropriations on grounds that do not depend on the content of the cooperative endeavor agreements that remain to be submitted.  Act 18 has already been signed into law, the money has already been appropriated, and all of the legal issues are before the Court. *See, e.g., Buono v. Kempthorne*, - F.3d -, 2007 WL 2493512, at *7 n.6 (9th Cir. 2007) ("passage of a statute and putting it into effect (even if the effect is not complete) gives rise to a dispute ripe for judicial

19

review").

Second, there will be hardship to the ACLU if the Court withholds judicial decision, including the imminent threat of disbursement of taxpayer funds in violation of the First Amendment.  "One does not have to await the consummation of threatened injury to obtain preventive relief.  If the injury is certainly impending, that is enough." *Thomas*, 473 U.S. at 581 (quotations omitted).  Finally, the Supreme Court has found that facial challenges to statutes or policies on Establishment Clause grounds are not premature.  In *Santa Fe Independent School District v. Doe*, 530 U.S. 290 (2000), for example, the Supreme Court evaluated the constitutionality of a Santa Fe school district policy that permitted high school students to hold an election determining, first, whether to include a "statement or invocation" as part of pre-game ceremonies at football games, and, second, to elect the student volunteer to deliver the message and/or invocation, if they chose to have one delivered. *Id*. at 298.  The Supreme Court held that the policy of permitting student-led, student-initiated prayer at football games violated the Establishment Clause. *Id*. at 301.

The appellants in *Santa Fe* argued that the facial challenge to the policy was premature because it was uncertain whether any of the statements or invocations would be of a religious nature

20

until a student actually delivered one.  The Supreme Court rejected this argument, noting that its "Establishment Clause cases involving facial challenges ... have not focused solely on the possible applications of the statute, but rather have considered whether the statute has an unconstitutional purpose." *Id.* at 314.  The Court held that the policy was invalid because its text alone revealed an unconstitutional purpose, and the "mere passage by the District of a policy that has the purpose and perception of government establishment of religion" creates a constitutional injury. *Id.*  The Court additionally held that the policy was facially invalid because by opening the issue of student prayer to majoritarian election, it "encourage[d] divisiveness along religious lines." *Id.* at 317.

The same constitutional injuries are present on the face of Act 18.  The enactment of a law appropriating public money to two specific religious institutions has the "purpose and perception" of state endorsement of certain preferred religions and the danger of "encourag[ing] divisiveness along religious lines." *See id.* at 316.  The Court need not wait for the treasurer to disburse the funds to "confirm and magnify the constitutional injury." *Id.*

IV.   **CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss is DENIED.


New Orleans, Louisiana, this  5th  day of October, 2007.


                    _____
                         SARAH S. VANCE
                    UNITED STATES DISTRICT JUDGE