UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


AMERICAN CIVIL LIBERTIES UNION             CIVIL ACTION
FOUNDATION OF LOUISIANA


VERSUS                                     NO: 07-04090


KATHLEEN BABINEAUX BLANCO, ET AL.          SECTION: "R"(5)



## ORDER AND REASONS

Before the Court is plaintiff ACLU's motion for preliminary injunction.  For the following reasons, the Court GRANTS plaintiff's motion.


I.   BACKGROUND

On August 13, 2007, the ACLU filed a complaint pursuant to 28 U.S.C. § 1983 against Kathleen B. Blanco, Governor, State of Louisiana, in her official capacity, and John Neely Kennedy, Treasurer, State of Louisiana, in his official capacity. Plaintiff alleges that the Louisiana legislature's appropriations of unrestricted, unmonitored, non-neutral grants of state

taxpayer money to the Stonewall Baptist Church of Bossier City, Louisiana, and the Shreveport Christian Church violate the Establishment Clause of the United States Constitution, as applied to the states by the Fourteenth Amendment. (Pl.'s Compl. ¶ 17).  Plaintiff also filed a motion for temporary restraining order/preliminary injunction to prevent the treasurer from disbursing the appropriated funds to the churches pursuant to the 2007 general appropriations bill, 2007 La. Acts 18 ("Act 18").

Act 18 was passed by the Louisiana State Legislature and signed by Governor Kathleen Blanco on July 12, 2007.  It allocates funds from various state sources for purposes including state government administration, public education, local government services, and health and human services.  The final schedule of the Act, Schedule 20 (titled "Other Requirements"), includes section 20-945, "State Aid to Local Government Entities," which "provides special state direct aid to specific local entities for various endeavors." *See* 2007 La. Acts 18 at § 20-945.  As a result of recent reforms by Governor Blanco, Act 18 is the first general appropriations bill to publicly list the recipients of earmarked funds.  In Act 18, the legislature appropriated $100,000 to the Stonewall Baptist Church from the State General Fund and $20,000 to the Shreveport Christian Church, also payable out of the State General Fund. *See* 2007 La.

2

Acts 18 at § 20-945, p. 277:35-37; 278:39-40.  The legislation does not state or restrict the purpose for which the funds may be used although it requires the recipients of earmarked funds to submit a budget showing what they propose to use the money for and to provide periodic reports concerning their use of the funds. *See* 2007 La. Acts 18 at § 18(B)(1)(requiring recipient to submit a "comprehensive budget" showing "anticipated uses of the appropriations" and periodic reports concerning the use and "goals and objectives" for the funds).  By executive order, the governor additionally requires recipients of earmarked funds to complete a cooperative endeavor agreement in which they describe the public purpose for which they will use the funds and supply a budget. *See* Exec. Order No. KBB 2006-32, "Accountability for Line Item Appropriations," July 12, 2006; Exec. Order No. KBB 2005-14, "Cooperative Endeavor Agreements," May 27, 2005.

On August 27, 2007, defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction.  Defendants argue that the Eleventh Amendment of the U.S. Constitution affords Governor Blanco and Treasurer Kennedy, in their official capacities, immunity from plaintiff's suit.  Defendants additionally assert that the suit presents no justiciable case or controversy because the ACLU lacks standing and its claim is not yet ripe for judicial review.  On September

14, 2007, the Court heard oral argument on the pending motions. By separate order, the Court denied defendants' motion to dismiss.  The Court now addresses the merits of plaintiff's motion for a preliminary injunction.


## II.  LEGAL STANDARD

To obtain a preliminary injunction, a movant must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any potential harm to the non-movant; and (4) that the injunction will not undermine the public interest. *Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006).  Injunctive relief is considered an extraordinary remedy, to be granted only when the movant has "clearly carried the burden of persuasion" on all four requirements. *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003).


## III. DISCUSSION

### A.  Substantial Likelihood of Success on the Merits

The Court is satisfied that the ACLU has met its burden of proving that it is substantially likely to prevail on the merits

4

of its complaint that the Louisiana legislature's line-item appropriations to Stonewall Baptist Church and Shreveport Christian Church violate the First Amendment of the U.S. Constitution, as applied to the states.

The First Amendment of the U.S. Constitution states that "Congress shall make no law respecting an establishment of religion..." and is applicable to the states through the due process clause of the Fourteenth Amendment. *See Murdock v. Pennsylvania*, 319 U.S. 105, 108 (1943).  The history of the United States has not been one of pure separation of Church and State.  As the Supreme Court recognized in *Committee For Public Education and Religious Liberty v. Nyquist*, 413 U.S. 756 (1973), "[i]t has never been thought either possible or desirable to enforce a regime of total separation, and as a consequence cases arising under these Clauses have presented some of the most perplexing cases before this Court." *Id*. at 760.  Nevertheless, certain practices fall within the core proscription of the Establishment Clause.  These include government's use of the taxing and spending power to favor one religion or to support religion as such.  "Our history vividly illustrates that one of the specific evils feared by those who drafted the Establishment Clause and fought for its adoption was that the taxing and spending power would be used to favor one religion over another

5

or to support religion in general." *Flast v. Cohen*, 392 U.S. 83, 103 (1968). *See also Everson v. Board of Ed. of Ewing*, 330 U.S. 1, 15 (1947) ("The 'establishment of religion' clause of the First Amendment means at least this: Neither a state nor the Federal Government can set up a church.  Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another."); *Nyquist*, 413 U.S. at 772 (quoting *Walz v. Tax Comm'n of City of New York*, 397 U.S. 664, 668 (1970)) ("Primary among those evils" the Establishment Clause protects against are "sponsorship, financial support, and active involvement of the sovereign in religious activity."); *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 840 (1995) ("a tax levied for the direct support of a church or group of churches ... of course, would run contrary to Establishment Clause concerns dating from the earliest days of the Republic").

The challenged appropriations in this case fall within the core proscription of the Establishment Clause.  Indeed, the Court has not found, and the parties have not cited, any similar case in which the legislature simply appropriated unrestricted funds to a sectarian institution.  First, the appropriations evidence a legislative preference for two specific houses of worship over

6

others.[1]  "The clearest command of the Establishment Clause is
that one religious denomination cannot be officially preferred
over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). *See
also Board of Educ. of Kiryas Joel Village Sch. Dist. v. Grumet*,
512 U.S. 687 (1994).  Second, the appropriations in this case are
non-neutral legislative appropriations to two pervasively
sectarian institutions.  "In the absence of an effective means of
guaranteeing that the state aid derived from public funds will be
used exclusively for secular, neutral, and nonideological
purposes, it is clear from [the Court's] cases that direct aid in
whatever form is invalid." *Nyquist*, 413 U.S. at 780.  As the
legislation at issue specified no purpose for which the two
churches must use the money, it is apparent that it was their
identity as houses of worship, and not some religiously neutral
purpose, that was the basis for the grants.  Third, this
government favoritism toward certain churches, together with the
lack of a specific secular purpose for the funds, violates
constitutional requirements that such government aid be for a

---

[1] Counsel for Defendants represented to this Court during
oral argument that there are in fact fourteen appropriations to
houses of worship in Act 18. *See* Transcript of Oral Argument at 8
(Sept. 14, 2007).  Only the appropriations to the Stonewall
Baptist Church and the Shreveport Christian Church are before
this Court, but in any case, this information does not indicate
that the appropriations bill does not discriminate among
religions.

secular purpose and not foster excessive government entanglement with religion. *See Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971) (holding that in order to be constitutional, a statute must have a secular legislative purpose, its primary effect must be one that neither advances nor inhibits religion, and it must not foster an excessive government entanglement with religion). Although the Court finds that these non-neutral, direct money grants of taxpayer funds to favored houses of worship are clearly unconstitutional under any Supreme Court test, it will analyze these appropriations under each of the relevant strains of the Supreme Court's Establishment Clause jurisprudence.

The Supreme Court has used its most stringent test, strict scrutiny analysis, when, as here, a state law evinces a denominational preference among religions.  In *Larson*, the Supreme Court held that a Minnesota statute that imposed certain registration and reporting requirements upon only those religious organizations that received less than fifty per cent of their contributions from members discriminated against those organizations in violation of the Establishment Clause.  Before the enactment, the legislature exempted all religious organizations from the state's charitable solicitation law that imposed the registration requirements.  The challenged legislation preserved the exemption for only those religious

8

organizations that received more than fifty per cent of their contributions from members.  The Court found that it was "presented with a state law granting a denominational preference," and therefore its "precedents demand[ed] that [the Supreme Court] treat the law as suspect and ... apply strict scrutiny in adjudging its constitutionality." *Id*. at 246.  Under strict scrutiny, a court will invalidate a statute unless it is justified by a compelling governmental interest and is closely tailored to further that interest. *Id*. at 246-47 (citing *Widmar v. Vincent*, 454 U.S. 263, 269-270 (1981), and *Murdock*, 319 U.S. at 116-117).  The Court held that even assuming arguendo that the state's asserted interest in protecting the public from abusive solicitations practices was "compelling," the distinctions drawn by the legislature were not narrowly tailored to further that interest.  The Court concluded that the "fifty percent rule sets up precisely the sort of official denominational preference that the Framers of the First Amendment forbade." *Id*. at 255.  The Louisiana legislature has provided no stated reason for the appropriations, much less shown a compelling governmental interest.  The Court finds that the money grants do not survive strict scrutiny.

    These appropriations also fail under the Supreme Court's jurisprudence that focuses on whether government has exercised

its authority in a religiously neutral way.  In *Kiryas Joel*, *supra*, the Supreme Court invalidated a New York statute carving out a school district that matched the borders of a religious enclave of Satmar Hasidim, practitioners of a strict form of Judaism.  The school board, made up of members of the Satmar Hasidic sect, ran only one public school - a special education program for handicapped children.  The Court held that "'[a] proper respect for both the Free Exercise and the Establishment Clauses compels the State to pursue a course of 'neutrality' toward religion,' favoring neither one religion over others nor religious adherents collectively over nonadherents." *Id.* at 696 (quoting *Nyquist*, 413 U.S. at 792-93).  The law violated the principle of government neutrality by extending the benefit of a special franchise to a particular religious sect. *Id.* at 703-07. The Act provided no guarantee that other religious and nonreligious groups would be accorded similar preferential treatment.  As the Court observed, "[t]he anomalously case-specific nature of the legislature's exercise of state authority in creating this district for a religious community leaves the Court without any direct way to review such state action for the purpose of safeguarding a principle at the heart of the Establishment Clause, that government should not prefer one religion to another, or religion to irreligion." *Id.* at 703.

Further, in holding that such legislative favoritism along religious lines violated the general principle that civil power must be exercised in a manner neutral to religion, the Court emphasized that other cases had survived Establishment Clause challenges because the preferred benefit was generally available to religious groups or individuals. *Id*. at 704-05 (citing *Walz v. Tax Comm'n*, 397 U.S. at 673, and *Bowen v. Kendrick*, 487 U.S. 589, 608 (1988)). *Cf. Texas Monthly Inc. v. Bullock*, 489 U.S. 1 (1989) (striking down sales tax exemption exclusively for religious publications).

In *Mitchell v. Helms*, 530 U.S. 793 (2000), the Supreme Court reiterated the importance of neutrality.  "If the religious, irreligious, and areligious are all alike eligible for governmental aid, no one would conclude that any indoctrination that any particular recipient conducts has been done at the behest of the government." *Id*. at 809.  The challenged appropriations in this case violate the constitutional mandate of neutral distribution.  Rather than choosing a secular aim to be achieved by the State, and then implementing a program under which religious and nonreligious organizations could apply to serve that public goal, the State of Louisiana has singled out certain churches, allocated funds to them directly, and identified no secular purpose for the money.  Furthermore, that

11

the legislature identified no specific purpose for these grants demonstrates that it was the churches' religious identity that motivated the conferral of these benefits. *See Agostini v. Felton*, 521 U.S. 203, 230-33 (1997) (a criterion for whether a statute advances religion is whether it defines its recipients by reference to religion).

Finally, these grants also violate the test of *Lemon v. Kurtzman*, which the Supreme Court applies in Establishment Clause cases.  In order to be constitutional, a statute must have a secular legislative purpose, its principal or primary effect must be one that neither advances nor inhibits religion, and it must not foster an excessive government entanglement with religion. *Id*. at 612-13.[2]  In this case, the appropriations clearly do not identify any secular purpose.  Although the legislature stated the purpose for which some of the other recipients were to use earmarked funds,[3] it placed no such restrictions on the

---

[2] In *Agostini, supra*, the Supreme Court modified the *Lemon* test with respect to aid to parochial schools.  The Court looked only at the first two prongs of the *Lemon* test because it found the entanglement prong to be a criterion relevant to determining the primary effect of the statute.  The Court then set out three criteria for determining if a statute has the effect of advancing religion, including whether it results in governmental indoctrination, defines its recipients by reference to religion, or creates an excessive entanglement. *Id.* at 233-234.

[3] E.g., "Payable out of the State General Fund (Direct) to the Vernon Parish Police Jury for Ward 5 streets and roads,

appropriations at issue.  The legislature has therefore directly appropriated money to primarily sectarian institutions with no stated secular purpose. *Compare Lemon*, 403 U.S. at 613 (noting that the legislatures "sought to create statutory restrictions designed to guarantee the separation between secular and religious educational functions and to ensure that State financial aid supports only the former"), *and Bowen* (upholding the Adolescent Family Life Act because it was motivated primarily by a legitimate secular purpose), *and Everson* (upholding the expenditure of tax-raised funds to reimburse parents for fares paid for the transportation of children attending public and Catholic schools because it was for a secular purpose), *with Edwards v. Aguillard*, 482 U.S. 578 (1987) (holding Louisiana "Creationism Act" unconstitutional because it served no identified secular purpose).

Furthermore, by favoring two houses of worship over others, the appropriations pose the danger of excessive government entanglement with religion.  In *Lemon*, the Supreme Court stated that excessive entanglement can arise when programs carry the

---

including George Street, Royce Street, and Webster-Markle Road"; "Payable out of the State General Fund (Direct) to the village of Cankton Volunteer Fire Department to enlarge the existing fire station and for emergency equipment." 2007 La. Acts 18, at §20-945, p. 297:13-20.

potential for divisiveness along religious lines. *Id*. at 622
("political division along religious lines was one of the
principal evils against which the First Amendment was intended to
protect"). As the Court observed in *Nyquist*, "where the
underlying issue is the deeply emotional one of Church-State
relationships, the potential for seriously divisive political
consequences needs no elaboration." *Id*. at 797-98. The Louisiana
legislature's appropriations, in which the government favors
certain houses of worship with direct monetary grants, pose the
danger, identified in *Nyquist*, of contributing to political
divisiveness and fostering "competition among religious sects for
political and religious supremacy ... 'generated in large part'
by competing efforts to gain or maintain the support of
government." *Id*. at 796-97 (quoting *Everson*, 330 U.S. at 8-9).
The First Amendment seeks to avoid such consequences.

The defendants apparently contend that the cooperative
endeavor agreements that the churches must submit to receive
their funds save the legislation from constitutional infirmity.
This argument is flawed for a number of reasons. First, the
cooperative endeavor agreement requirement does not cure the
religious favoritism shown by the statute. Second, although the
relevant Executive Order envisions that recipients will state a
"public purpose" for the funds, which is nowhere required in the

statute itself, this does not endow the statute with a secular
purpose or amount to government neutrality.  The legislature
singled out these churches to receive public money, and the
churches have the discretion to decide how the money is used.
This arrangement is similar to that in *Larkin v. Grendel's Den*,
459 U.S. 116 (1982), in which the Supreme Court struck down a
Massachusetts statute because it delegated "important,
discretionary governmental powers" to religious bodies, thus
impermissibly entangling government and religion. *Id*. at 127.
Here the legislation and the executive orders delegate to favored
religious institutions the discretion to choose what they wish to
use public funds to accomplish.  This defect is not remedied by
the Executive Order's requirement that the churches' chosen
purpose be "public."

The Court does not quarrel with the idea that Governor
Blanco's Executive Orders demonstrate an effort to increase
transparency in the appropriations process and increase
accountability for the use of state funds.  Unfortunately, these
efforts do not cure the appropriations' constitutional defects.
The ACLU has carried its burden of showing a substantial
likelihood of success on the merits.

**B.   Substantial Threat of Irreparable Harm**

Plaintiff has also shown that the appropriations represent a

substantial threat to its First Amendment rights.  The Fifth
Circuit has stated that "[l]oss of First Amendment freedoms, even
for minimal periods of time, constitute irreparable injury."
*Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th
Cir. 1994).  Plaintiff has therefore sufficiently alleged a
substantial threat of irreparable harm.

### C.   Threatened Injury Outweighs Defendants' Potential Harm

The Court finds that plaintiff's threatened injury also
outweighs any potential harm to defendants.  These appropriations
deny plaintiff its First Amendment protections.  Defendants have
not shown they will suffer any harm other than some disruption of
the legislative process by grant of a preliminary injunction.  In
balancing plaintiff's threatened injury with defendants', the
Court finds that the scale tips in plaintiff's favor.

### D.   Public Interest

Finally, the Court finds that granting the preliminary
injunction will best serve the public interest.  "The public
interest is best served by enjoining any statute which
impermissibly favors a religious group in violation of the
Establishment Clause of the First Amendment until it can be
conclusively determined whether the statute withstands
constitutional scrutiny." *New Orleans Secular Humanist Ass'n,
Inc. v. Bridges*, 2006 WL 1005008, at *6 (E.D. La. 2006).

16

IV.  **PRELIMINARY INJUNCTION**

For the foregoing reasons, the Court finds that the ACLU is entitled to preliminary injunctive relief.  The Court hereby preliminarily enjoins and restrains defendants, Governor Kathleen Blanco and Treasurer John Kennedy, and all others in active concert or participation with them, from disbursing funds appropriated by Act No. 18 of the 2007 regular legislative session of the Legislature of Louisiana to the Stonewall Baptist Church of Bossier City, Louisiana and the Shreveport Christian Church.  This preliminary injunction shall remain in effect until a trial is conducted on the merits, or until it is otherwise modified by the Court.

New Orleans, Louisiana, this <u>5th</u> day of October, 2007.

<u>Sarah Vance</u>
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE